IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL WELLS,<br><br>　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; KENNETH EIFERT; ZAKARY EATON; D. DEWS<br><br>　　Defendants. | No. C 19-2400 WHA (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; STAYING AND REFERRING CASE TO PRISONER MEDIATION PROJECT**<br><br>(ECF No. 21) |

### INTRODUCTION

Plaintiff, a prisoner at San Quentin State Prison, filed this pro se civil rights case under 42 U.S.C. § 1983 against the California Department of Corrections and Rehabilitation ("CDCR"), and three San Quentin employees: dentist Kenneth Eifert, Nurse Zakary Eaton, and Sergeant D. Dews. He claims that defendants violated his Eighth Amendment rights by failing to provide him with adequate care following a dental procedure. The claims against the CDCR were dismissed, and plaintiff filed an amended complaint. The remaining defendants have filed a motion for summary judgment, plaintiff filed an opposition, and defendants filed a reply brief. For the reasons explained below, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

On April 26, 2018, defendant Eifert, a dentist at San Quentin, fixed a cracked filling in one of plaintiff's wisdom teeth. After this procedure, plaintiff had Temporomandibular Joint Capsulitis ("TMJ"), i.e. pain and swelling in his jaw such that he could not open his mouth sufficiently to eat solid food. The TMJ was caused by pressure placed on his jaw and keeping his mouth wide open during the procedure.

On May 4, plaintiff submitted a request for care in which he described his problem. Eifert examined plaintiff on May 10 and found that he could open his mouth up to 1.9 centimeters. Eifert prescribed 30 tablets of 400mg of Ibuprofen and instructed plaintiff to eat soft foods, take the Ibuprofen regularly, apply warm compresses, and avoid chewing on the injured side of his mouth. Plaintiff bought some soft foods from the commissary, including noodle soup and instant oatmeal; he also bought cheese curls, which are hard, but there is no evidence that he tried to eat them.

The next day, plaintiff tried to eat a small bite of waffle and felt a "crunching" sensation and an "explosion" of pain in his jaw. Due to the pain, he did not eat the rest of the day or the next, when he went to the prison's emergency medical room. Plaintiff met with Eaton, a Registered Nurse, and told him that he had severe pain in his jaw from Eifert's dental work, that the pain had increased the previous day when he tried to eat, that he had not eaten since, and that the Ibuprofen was not helping. Eaton found that plaintiff did not have swelling around his jaw that would indicate an infection and therefore concluded there was no immediate danger to his health. Because no dentist was on duty that day (a Sunday), he told plaintiff to submit a health care request form and a dentist would see him the upcoming week. Plaintiff submitted the form, which Eaton processed immediately, and plaintiff was seen by Eifert two days later.

After leaving the emergency room, plaintiff returned a couple of hours later because of the persistent pain and spoke to defendant Sergeant Dews, who was responsible for managing the flow of inmates to and from the emergency room. Plaintiff described his pain, condition, and inability to eat. Dews told plaintiff that he had to return to his cell because a nurse had

already examined him and determined that plaintiff had to wait until a dentist was on duty in the upcoming days.

Two days later, on March 15, Eifert examined plaintiff again and found that his maximum his mouth opening had decreased to 1.5 cm.  In the interim, plaintiff could not eat food other than watered-down instant oatmeal and broth made from the flavoring from his soup packets and prison-supplied grits.  Plaintiff told Eifert about the crunching sensation from three days earlier, that he had been unable to eat soft or hard foods since, and that the ibuprofen was not working to alleviate his pain.  Plaintiff requested a liquid dietary supplement ("Ensure").  Eifert prescribed another round of Ibuprofen at the same dosage, and denied the liquid diet, which was reserved under prison policy for people with a medical need for it, such as if their jaw was wired shut, they had multiple extractions, or following oral surgery.  Plaintiff asked if Eifert could wire his jaw closed, and Eifert denied the request because there was no medical or dental need to do so.  Eifert opined that plaintiff could eat soft food provided by the prison.  Eifert told plaintiff that he would be seen the for a follow-up in two days.

Two days later, on May 17, plaintiff had not received a follow-up appointment, and by then he had developed severe abdominal pain.  He felt nauseated, light-headed, and dizzy.  He stopped taking Ibuprofen and drinking the soup broth to address his abdominal pain, and he submitted a request for a further appointment and liquid nutritional supplement.  He received an appointment with Eifert on May 22.  At the appointment, plaintiff told Eifert about his stomach pains and other symptoms, and that he could not eat solid foods because of his continued jaw pain.  Plaintiff's mouth opening was still a maximum of 1.5 cm.  Eifert had pursued consultations with a dietician, a pharmacist, and an oral surgeon.  The prison's dietician had quit, and Eifert made an appointment for plaintiff with the new dietician for June 22.  The pharmacist advised Eifert that plaintiff could continue to take Ibuprofen safely.  Eifert got authorization to refer plaintiff to an oral surgeon.

The oral surgeon examined plaintiff on May 30.  He gave plaintiff exercises for his jaw to increase the range of motion and recommended a supplement to decrease plaintiff's gastric

3

1  distress. He told plaintiff that Eifert would have to decide whether plaintiff could receive the
2  liquid nutritional supplement. On June 2, plaintiff requested a follow-up appointment with
3  Eifert and for the nutritional supplement. Eifert saw plaintiff on June 7, by which time the
4  range of motion exercises had alleviated some of plaintiff's jaw pain and he could open his
5  mouth to 3.5 cm and eat soft and more nutritious food. At follow-up appointments with Dr.
6  Eifert on June 14 and June 22, plaintiff reported continued improvement and eventual resolution
7  of his jaw pain as he had continued his range of motion exercises. Although plaintiff attended
8  his appointment with the dietician on June 22, but he did not need a consultation because his
9  condition no longer prevented him from eating nutritious food.

## ANALYSIS

### A.  STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those which may affect the outcome of the case. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

4

**B.     DISCUSSION**

Plaintiff claims that defendants Eifert, Eaton, and Dews violated his constitutional rights in failing to adequately address his painful jaw condition and impediment to his eating. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.*

1. Dr. Eifert

There are triable factual issues pertaining to plaintiff's claim that Eifert was deliberately indifferent to plaintiff's serious medical needs for more nutritious food and pain alleviation. Drawing all inferences from the evidence in plaintiff's favor, from May 10 to June 7, 2018, plaintiff could eat no more than flavored broth and watered-down oatmeal that he purchased from the canteen. This caused plaintiff to suffer hunger, severe abdominal pain, diarrhea, dizziness, and weight loss, in addition to the severe pain in his jaw. Eifert knew about this by May 15, and knew that the steps he took did not and would not adequately address plaintiff's inability to eat.

There is a factual dispute as to whether plaintiff could eat the soft food provided by the prison during this time. Eifert states that plaintiff could, but plaintiff states that he could not because of his jaw pain. A reasonable fact-finder could believe plaintiff because he could only open his mouth 1.5 cm, which a fact-finder could reasonably decide was too small for soft food. And when he did try to eat a bite of waffle, which if it was not toasted would have been soft, he exacerbated his injury with a crunching sound and severe pain in his jaw.

Eifert cites prison policy as not allowing plaintiff the liquid nutritional supplement, but Eifert does not present evidence that he sought an exception to that policy, that he would not be

able to obtain such an exception, or that there was not some other way to address plaintiff's inability to eat, such as, for example, referring him to the hospital for intravenous feeding.

A reasonable fact-finder could also decide that Eifert's efforts to find plaintiff sufficient nutrition were too little and too later. Eifert attempted to consult a dietician about plaintiff's nutrition, but he learned that noone would be available for more than a month, until June 22. Eifert told plaintiff that the oral surgeon could obtain the liquid nutritional supplement for plaintiff, but that proved not to be the case, and in any case Eifert learned that plaintiff would not be seen by an oral surgeon until May 30, more than two weeks after he reported not being able to eat soft food. As there is no evidence that would preclude a reasonable fact-finder from finding that Eifert could have obtained a liquid nutritional supplement or another nutrition source such as intravenous feeding for an inmate, like plaintiff, who could not even eat soft food for approximately four weeks, there is a triable issue of fact as to whether Eifert was deliberately indifferent to plaintiff's serious medical need for more nutrition.

There is also a triable issue as to whether Eifert was deliberately indifferent to plaintiff's jaw pain. The evidence does show that Eifert continuously prescribed plaintiff Ibuprofen, that it was the standard pain medication for a conservative approach plaintiff's jaw pain, and that such medication was otherwise safe for plaintiff. Eifert denies that plaintiff asked for different pain medication, but plaintiff states that he told Eifert at the May 15 appointment that the Ibuprofen was not working; indeed, plaintiff could not open his mouth wider than 1.5 cm. A reasonable fact-finder could believe plaintiff's account and find that Eifert knew that he was not adequately addressing plaintiff's pain. Because the pain was the cause of plaintiff's inability to eat soft foods for several weeks, a reasonable fact-finder could also conclude that Eifert was deliberately indifferent to plaintiff's very important medical needs to alleviate severe pain and to eat.

Eifert also argues that he was not deliberately indifferent because plaintiff's condition healed on its own, as Eifert had predicted. This is irrelevant to the time period when plaintiff was healing and could not eat adequate food for nearly a month while it healed. Also, the

6

1  evidence shows that plaintiff's jaw healed after he did the range of motion exercises that the

2  oral surgeon recommended. Eifert presents no evidence as to why he did not teach plaintiff

3  those exercises weeks earlier. While under only Eifert's care, plaintiff's conditioned worsened

4  or stayed the same.

Eifert argues that he is entitled to qualified immunity. As noted above, it must be assumed at this stage that plaintiff could not eat soft food from May 10 to June 7, 2018, and that the Ibuprofen was not addressing his pain sufficiently. There is no evidence that Eifert could not have taken greater steps to obtain a nutritional solution and/or better pain medication for plaintiff, whom — it must be assumed — Eifert knew could otherwise not eat adequately for approximately four weeks. Eifert is not entitled to qualified immunity because no prison official could reasonably believe such actions to be lawful. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001).

2.   Nurse Eaton

Plaintiff has failed to create a triable issue as to whether Eaton, the emergency room nurse, was deliberately indifferent to his serious medical needs. The evidence shows that in his position, Eaton's responsibility was to decide whether patients' conditions were life-threatening required immediate treatment or a visit to an outside hospital, or non-life-threatening and treatable within a short period of time. The evidence also shows that Eaton immediately processed plaintiff's request to see Eifert such that Eifert received it the next day and examined plaintiff within two days. There is no evidence that Eaton knew that plaintiff had an emergency medical need such that his life would be in danger if he had to wait that long. Eaton did not find swelling in the jaw that would indicate an infection and the need for more immediate care. There is no evidence that Eaton knew that Eifert would not be able to address plaintiff's problems at an examination in two days. Even assuming that Eaton knew that plaintiff could not eat soft food without pain, a fact-finder could not reasonably find Eaton's anything more than negligent, which does not violate the Eighth Amendment. *See Pearson v. Callahan*, 555 U.S. at 231. Eaton is entitled to summary judgment on plaintiff's Eighth Amendment claim.

7

3. <u>Sergeant Dews</u>

There are also no triable factual issues pertaining to plaintiff's claims against defendant Dews.  The undisputed evidence shows that Dews was not a medical professional and had no ability or authority to evaluate plaintiff's medical condition or treatment needs.  There is no dispute that Dews knew that no dentist was on duty when he spoke to plaintiff, or that Dews knew that plaintiff had just seen the emergency room nurse (Eaton) who concluded that plaintiff did not have a medical need to be seen immediately.  A reasonable fact-finder could not conclude that Dews — lacking any medical expertise — knew that Eaton or Eifert were not giving plaintiff proper care.  Accordingly, Dews is entitled to summary judgment on plaintiff's deliberate indifference claim.

## CONCLUSION

For the reasons set out above, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion is denied as to plaintiff's claim that Dr. Eifert violated his Eighth Amendment rights, and it is granted as to plaintiff's claims against Eaton and Dews.

This case is **REFERRED** to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation Program.  All further proceedings in this are **STAYED** until further order, with the exception of any proceedings related to the mediation ordered below.

The mediation proceedings shall take place within 120 days of the date this order is entered.  Magistrate Judge Illman shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report.  All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties

//

//

otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

The clerk shall send a copy of this order to Magistrate Judge Illman.

**IT IS SO ORDERED.**

Dated: September 4, 2020



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE